# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| TERRY MOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:06-CV-0423-M |
| | § | |
| MARKET STREET MORTGAGE | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On February 27, 2006, Plaintiff Terry Mott received a letter from his employer, Defendant Market Street Mortgage Corporation ("Market Street"), stating that his "annual compensation will be reduced from $170,000 to $85,000, effective March 1, 2006." The next day, he responded, claiming that the letter was a "reduction" in his annual base salary, entitling him to terminate his Employment Agreement for cause. On cross-motions for summary judgment, the principal question for the Court is whether the letter to Mott constituted a "reduction" in his salary. Because the letter reduced Mott's annual *salary*—even though he had not yet received a reduced *paycheck*—the Court concludes that the letter was a reduction in Mott's annual base salary and that as a result Mott could and did terminate his Employment Agreement for cause.

For the reasons fully explained below, the Court therefore **GRANTS IN PART** both Mott's Motion for Partial Summary Judgment and Market Street's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Mott entered into a three-year Employment Agreement with Market Street on July 9, 2005. The Employment Agreement, which was drafted by employees of Market Street's parent corporation, set Mott's annual base salary at $170,000, and also provided for incentive compensation. On February 17, 2006, Market Street's vice president, Donnell Smith, sent a letter to Mott halving his annual compensation, effective March 1, 2006." The letter also conditioned Mott's existing incentive compensation plan on his reaching an additional productivity goal. It further provided that if Mott reached that productivity goal, he would be paid the $85,000 his salary was reduced.

Mott received Smith's letter on February 27, 2006, and responded the following day with a letter to Market Street's chief executive, Randy Johnson. Mott's letter terminated his employment for cause, based on Market Street's reducing his salary. After receiving Mott's letter, Johnson contacted Mott to attempt to convince him to stay, telling Mott that his salary had not been reduced. Mott responded that he had already terminated the Employment Agreement. Eventually he filed this suit, claiming damages for Market Street's alleged breaches of contract. Both parties now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[1] "The moving party bears the initial burden of

---

[1] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[2] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.[3]

The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.[4] That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.[5] The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding evidence favorable to the movant that the jury would not be required to believe.[6] Further, "the court must draw all justifiable inferences in favor of the nonmovant."[7]

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."[8] "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[9]

---

[2]*Lynch Props., Inc. v. Potomac Ins.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).
[3]*Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[4]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[5]FED. R. CIV. P. 56(e).
[6]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).
[7]*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).
[8]*Lynch*, 140 F.3d at 625.
[9]*Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts.[10] Further, the nonmoving party must do more than simply show some "metaphysical doubt as to the material facts."[11]

## ANALYSIS

### *A. Smith's letter was a "reduction" in Mott's annual base salary*

The central dispute in this case is whether Smith's February 17, 2006 letter to Mott—which stated that Mott's "annual compensation will be reduced from $170,000 to $85,000, effective March, 1, 2006"—constituted a reduction in Mott's annual base salary as of February 28, 2006, the date of Mott's response, terminating the contract for cause. The matter is one of contract interpretation, and the parties agree about the applicable law. This is a diversity action, and the Employment Agreement provided that its interpretation is governed by the law of Georgia.

In Georgia, "construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract."[12] The trial court is to make a three-step analysis.[13] The Court first determines whether the contract language is ambiguous.[14] If it is, the Court applies the rules of contract construction to attempt to resolve the ambiguity.[15] If it cannot do so, then a jury must resolve any ambiguity that persists.[16] Of particular relevance to the

---

[10]*Lynch*, 140 F.3d at 625.
[11]*Matsushita*, 475 U.S. at 586.
[12]*Deep Six, Inc. v. Abernathy*, 538 S.E.2d 886, 888 (Ga. Ct. App. 2000).
[13]*Id*.
[14]*Id*.
[15]*Id*.; GA. CODE ANN. § 13-2-2 (West 2007) ("Rules of interpretation").
[16]*Abernathy*, 538 S.E.2d at 888.

potential ambiguity presented here is the rule of construction that courts "should avoid any construction that renders portions of the contract language meaningless."[17] To be specific, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."[18]

Mott's Employment Agreement with Market Street provides for termination by Mott for "cause," which is defined, in part, as "a reduction by the Company in the Executive's Annual Base Salary." "Annual Base Salary" is defined as "the Executive's annual base salary in effect immediately prior to the Executive's termination of employment." As of February 2006, Mott's annual base salary was $170,000. In his February 28, 2006 letter, Mott responded to Smith's February 17, 2006 letter as follows: "This is to provide notice of termination of my Employment Agreement with Market Street Mortgage corporation [sic] pursuant to section 3.2.2(a) of the Agreement. The cause is a reduction by the Company in my annual base salary." In moving for summary judgment, Mott claims that the letter from Smith was in fact a reduction in his salary. In responding and in also moving for summary judgment, Market Street argues that because Mott was never actually paid a reduced amount—which is not disputed—his salary was not reduced. Thus, the dispute centers over what the Employment Agreement means by a "reduction" in "annual base salary."

In support of their positions, the parties seize upon different portions of the definition of "reduction." Mott argues that it means "the act or process of reducing," and therefore includes Smith's letter, which stated an intention of making reduced payments in the future. Market

---

[17]*Id.*
[18]GA. CODE ANN. § 13-2-2(4) (West 2007).

Street responds that it means "the state of being reduced," and therefore that a reduction does not occur until a reduced payment is received. The Court finds that the plain meaning of the term "salary" resolves the dispute over which interpretation is appropriate. Black's Law Dictionary defines "salary" as "[a]n agreed compensation for services—esp[ecially] professional or semiprofessional services—usu[ally] paid at regular intervals on a yearly basis."[19] In the Employment Agreement, Market Street contracted to pay Mott $170,000 per year for three years for the services he provided. Thus, the Court concludes that Mott need not actually have received his next paycheck for his *annual base salary* to be reduced. When Market Street informed Mott that it would pay him less during his current term of employment, his annual agreed compensation was reduced.

This interpretation is confirmed by other provisions of the Employment Agreement. Section 1.5.2 of the Employment Agreement allows Mott to terminate the agreement for cause for six reasons. The first reason, contained in subsection (a), is the subject of this suit and allows for termination for a reduction in Mott's annual salary. Subsection (d), when read together with subsection (a), resolves whatever ambiguity the word "reduction" creates. Mott was permitted to terminate the Employment Agreement, under subsection (d), for "the failure by the Company to pay the Executive any portion of the Executive's current compensation within seven days of the date such compensation is due." If the Court accepted Market Street's proposed construction of "reduction" as requiring actual delivery of a reduced paycheck, subsection (d) would be superfluous, because subsection (d) accounts for actual delivery of reduced paychecks. More

---

[19]BLACK'S LAW DICTIONARY 1337 (West Deluxe 7th ed. 1999); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1031 (10th ed. 1995) (defining "salary" as a "fixed compensation paid regularly for services").

importantly, subsection (d) allows Market Street seven days to fully pay any unpaid portion of a paycheck. If the Court accepted Market Street's proposed construction of "reduction," Mott could terminate for cause under subsection (a) when a payment was late without allowing Market Street the seven-day grace period expressly provided by subsection (d). Thus, "reduction" must mean something other than the actual delivery of a reduced paycheck. Accordingly, the only reasonable construction of § 1.5.2(a), and the word "reduction," is to allow Mott to terminate the Employment Agreement based upon Market Street's stated intention to make reduced payments to him during his current term of employment. In other words, subsection (a) allows Mott to terminate if Market Street reduces his annual *salary*, and subsection (d) allows Mott to terminate if Market Street actually fails to deliver to Mott the full amount due on a particular payday, subject to a seven-day grace period.

Having construed the relevant provision of Mott's Employment Agreement, the Court finds that Smith's letter to Mott effected a reduction in Mott's annual base salary, and that Mott terminated the Employment Agreement for cause, as a result of the reduction, with his letter of February 28, 2006. The final paragraph of Mott's February 28, 2006 letter does not change the Court's decision. In that paragraph, Mott states that "[i]f this was not the intended consequence of the letter I received, please call to discuss an alternative solution." At most, the sentence implies that Mott was open to continuing some relationship with Market Street. It does not retract the effect of the previous three paragraphs, which unmistakably terminate the Employment Agreement.

*B. Damages available for the reduction in Mott's salary*

Section 3.4 of the Employment Agreement provides that if Mott terminates the agreement

for cause, Market Street "shall pay to [Mott] as severance pay and liquidated damages" a sum of money including, among other things, his annual base salary and incentive compensation.[20] The Court agrees that by the plain terms of the Employment Agreement, Mott is entitled to the remedial compensation set out in § 3.4. The Court disagrees, however, that Mott is additionally entitled to actual damages for the reduction in his annual salary, because the reduction in Mott's salary was not a breach of the Employment Agreement. Rather, the agreement specifically contemplated that Market Street might reduce Mott's salary and provided for that contingency in § 3.4. The holding in *Estate of Sam Farkas, Inc. v. Clark* is instructive, which found no breach "when plaintiffs could not gain possession for four months [of property bought], because the contract provided for such known contingency and provided a remedy."[21] Accordingly, the Court finds Market Street liable for the remedial compensation set out in § 3.4. Market Street is additionally liable for breaching § 3.4 by failing to pay Mott the compensation due as a result of its reduction of his salary.

The Court will not consider Mott's Motion as it relates to determination of a specific

---

[20]The parties principally focus on the following portion of § 3.4:
> In the event Executive's employment is terminated under this Agreement prior to the expiration of the Term pursuant to Section 3.3.1(b) or Section 3.3.2(a)[, the provision invoked by Mott], the Company shall pay to the Executive as severance pay and liquidated damages a lump sum amount equal to the sum of the (a) Annual Base Salary and (b) Incentive Compensation), [sic] which amount shall in [sic] lieu of any other severance benefits that the Executive might otherwise have been entitled to under any other plan, practice, arrangement or agreement of the Company. In addition, for a period of twelve months following the effective date of the termination (the "Severance Period"), the Company shall continue to provided to the Executive, to the extent practicable, the benefits described in Section 4.3; provided, however, that in lieu of providing health benefits, the Company shall pay the Executive an amount equal to the difference between (x) the cost of COBRA health continuation coverage that would be charged by the Company to a former employee and eligible dependents for the greater of the Severance Period or the period during which the Executive and his eligible dependents are entitled to COBRA health continuation coverage from the Company and (y) the amount for which the Executive would have been responsible to pay under the health benefit plans in effect for the Executive immediately prior to his termination.

[21]517 S.E.2d 826, 830 (Ga. Ct. App. 1999).

amount of damages, as he only raised the issue in his Reply, but the Court will consider Market Street's claim that no matter what its liability to Mott, it is not liable for any of Mott's claimed incentive compensation under § 3.4.  The Employment Agreement defines "Incentive Compensation" as "the highest annual incentive bonus paid or payable to [Mott], including any bonus or portion thereof that has been earned but deferred, for any of the two fiscal years (annualized if [Mott] has been employed only for a portion thereof) immediately prior to the fiscal year in which the date of termination of employment occurs."  Annex C of the agreement outlines Mott's Incentive Compensation Policy, which provides for his Annual Base Salary, his Signing Bonus, and his Net Contribution Incentive Plan.

Market Street moves the Court to find that Mott would only be able to recover, as Incentive Compensation, an award under his Net Contribution Incentive Plan, and that no award would be merited under that provision.  Mott concedes that he would not be entitled to any award based on the Net Contribution Incentive Plan, but argues that the Signing Bonus provision would entitle him to an award.  That provision states that "Mott will receive a signing bonus of $100,000 to be paid on the 1st official payday applicable to start [sic] date.  In addition, you will receive an additional $150,000 assuming that $600,000,000 in volume is originated and closed within 12 months from the date of the acquisition by Market Street Mortgage Corporation [of Major Mortgage Corporation, Mott's former employer].  This payment would be paid in July 2006."  No issue of fact exists as to the fact that $600,000,000 in volume was originated and closed within the required period.  Therefore, the Court concludes that Mott is entitled to the $150,000 deferred signing bonus, which is included in the Employment Agreement's definition of "Incentive Compensation" as "including any bonus or portion thereof that has been earned but

deferred." The Court rejects Mott's argument, however, that § 3.4 entitles him to a duplicate payment of the $100,000 signing bonus paid to him on his first payday.

*C. Did Market Street repudiate its obligations under the Employment Agreement*

Mott next argues that Smith's letter was a renunciation and repudiation of Market Street's obligations under the Employment Agreement, and that this anticipatory breach entitles him to an award of actual damages in addition to remedial compensation described in § 3.4 of the Employment Agreement. In Georgia, "[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken."[22] "A breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible."[23] Georgia courts appear to use the terms "renunciation," "repudiation," "anticipatory repudiation," and "anticipatory breach" to describe the breach that occurs "when one party to a bilateral contract of mutual dependent promises *absolutely* refuses to perform and repudiates the contract prior to the time of his performance."[24] "The breach which will form the basis for this type of action is an unqualified repudiation of the entire contract prior to the time for performance."[25] "It is a question for the trier of fact as to whether any action of one party is sufficient to constitute a repudiation of the

---

[22] *Graham Brothers' Constr. Co. v. C.W. Matthews Contracting Co.*, 284 S.E.2d 282, 286 (Ga. Ct. App. 1981); *see also Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996) (quoting *id.*).

[23] *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 630 S.E.2d 85, 93 (Ga. Ct. App. 2006) (internal quotation marks omitted) (quoting *Feagin v. Feagin*, 330 S.E.2d 410, 412 (Ga. Ct. App. 1985)).

[24] *Coffee Butler Serv., Inc. v. Sacha*, 366 S.E.2d 672, 673 (Ga. 1988) (emphasis in original) (quoting *J.M. Clayton Co. v. Martin*, 339 S.E.2d 280, 282 (Ga. Ct. App. 1985)).

[25] *Cont'l Cas. Co. v. Stephenson*, 145 S.E.2d 825, 826 (Ga. Ct. App. 1965).

contract and amount to an anticipatory breach"[26]; however, "a repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'"[27]

Mott claims that Smith's letter was a repudiation of Market Street's obligations to Mott to (1) pay Mott his promised salary and (2) provide incentive compensation at the terms agreed to in the Employment Agreement. The Court has already found that the reduction in Mott's salary did not breach the Employment Agreement, but instead allowed Mott to terminate for cause and receive the compensation provided in § 3.4. Accordingly, the Court denies Mott's Motion as to the claim that Market Street renounced or repudiated its obligation to pay Mott his promised salary. The Court therefore considers only whether Smith's letter was a renunciation of Market Street's obligations regarding Mott's incentive compensation.

Mott claims that Smith's letter changed the terms of his incentive compensation by requiring Mott to meet additional goals before receiving incentive compensation, and that this change in the terms of his incentive compensation was a repudiation of the Employment Agreement. It may be that Market Street's letter repudiated its obligations under the Employment Agreement to pay Mott incentive compensation on particular terms; however, Mott did not accept the repudiation as a breach of contract.[28] Rather, relying on the continued existence of the Employment Agreement, he terminated for cause and requested the remedial compensation set out in § 3.4. Accordingly, no anticipatory breach occurred. Market Street's

---

[26]*Jones v. Solomon*, 428 S.E.2d 637, 639 (Ga. Ct. App. 1993).

[27]*Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (quoting *Roehm v. Horst*, 178 U.S. 1, 13 (1900)); *see also Henry v. Blankenship*, 644 S.E.2d 419, 422 (Ga. Ct. App. 2007) ("An absolute refusal by one party to perform an executory contract containing mutual obligations, prior to the date or dates fixed for performance, if such repudiation goes to the whole contract, amounts to a tender of a breach of the contract; and *if accepted as such* by the opposite party to the contract, it constitutes an anticipatory breach, and the injured party may at his election at once sue and recover his entire damages.") (emphasis added).

[28]*Id*.

Motion is **GRANTED**, and Mott's **DENIED**, with respect to Mott's claim that Market Street anticipatorily breached the Employment Agreement by repudiating the original terms of the incentive compensation plan.

*D. The non-competition and non-solicitation clauses
of the Employment Agreement do not apply*

Mott moves for summary judgment against Market Street's counterclaims, which allege that Mott violated the non-competition and non-solicitation clauses of the Employment Agreement. The clauses prohibit certain activity by Mott during his employment and for a period of twelve months following his employment. Neither clause applies, however, if Mott's termination was pursuant to either § 3.2.1(b) or § 3.2.2(a) of the Employment Agreement. Mott's termination for cause, which the Court has held was proper as a matter of law, was pursuant to § 3.2.2(a). Therefore, the non-competition and non-solicitation clauses are no longer in effect, and the Court **GRANTS** summary judgment in Mott's favor against Market Street's counterclaims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** both Mott's Motion for Partial Summary Judgment and Market Street's Motion for Summary Judgment. The Court concludes that Mott terminated the Employment Agreement for cause; that he is entitled to the remedial compensation set forth in § 3.4; that the "Incentive Compensation" portion of § 3.4 includes the deferred, but earned, bonus of $150,000, and not the already-paid bonus of $100,000; that Mott is not additionally entitled to actual damages for the reduction in his salary; that no anticipatory breach of the incentive compensation plan occurred; and that the non-competition and non-

solicitation clauses of the Employment Agreement do not apply. The parties shall have until **October 12, 2007** to attempt to resolve the remaining issues concerning damages and attorneys' fees. If they are unsuccessful, the Court will refer the remaining matters in dispute to a mediator. Should mediation fail, the Court will set all remaining issues for trial.

**SO ORDERED**.

August 29, 2007.

_____
**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**